# UNITED STATES DISTRICT COURT FOR THE
## MIDDLE DISTRICT OF TENNESSEE
### NASHVILLE DIVISION

HUGH A. NICELEY,              )
                                         )

      Petitioner,           )
                                         )

v.                          )     **No. 3:20-cv-00088**
                                       )     **Judge Trauger**

MIKE PARRIS,              )
                                         )

      Respondent.         )

## MEMORANDUM AND ORDER

Pending before the court is Hugh A. Niceley's federal habeas corpus petition challenging his 1994 convictions and sentence for seven counts of aggravated rape, one count of aggravated sexual battery, and one count of child rape. (Doc. No. 1.) The respondent, Warden Mike Parris, filed the state court record (Doc. Nos. 9, 45) and an answer urging dismissal (Doc. No. 46), and the petitioner filed a reply (Doc. No. 50). The petition is ripe for review, and the court has jurisdiction pursuant to 28 U.S.C. § 2241(d). Having fully considered the record, the court finds that an evidentiary hearing is not needed, and the petition may be resolved "as law and justice require." 28 U.S.C. § 2243; *Danforth v. Minnesota*, 552 U.S. 264, 278 (2008). For the following reasons, Petitioner is not entitled to habeas relief.

## I. Procedural History

On May 13, 1994, a Robertson County jury convicted the petitioner of seven counts of aggravated rape, one count of aggravated sexual battery, and one count of child rape. (Doc. 9-1 at 4-12.) On July 8, 1994, the trial court entered judgments that imposed a total effective sentence of 53 years of imprisonment at 30% release eligibility ("1994 Judgments"). (*Id.*) On direct appeal, the Tennessee Court of Criminal Appeals ("TCCA") reversed and remanded Counts 4, 5, 6, and 7

for a new trial, *State v. Niceley*, No. 01C01-9506-CC-00160, 1996 WL 233985, at *2-3 (Tenn. Crim. App. May 9, 1996), *perm. app. denied* (Tenn. Oct. 7, 1996), and the state elected not to retry the petitioner on these remanded counts. *Niceley v. State*, No. M2006-01892-CCA-R3-PC, 2008 WL 544600, at *2 (Tenn. Crim. App. Feb. 22, 2008), *perm. app. denied* (Tenn. Aug. 25, 2008) ("*Niceley II*"). The 1994 Judgments and effective sentence, however, remained unchanged. *Id*.; (Doc. No. 9-1 at 4-12.)

On October 3, 1997, the petitioner filed a petition for post-conviction relief. *Niceley II*, 2008 WL 544600, at *2. While this petition was pending, the Tennessee Department of Correction ("TDOC") wrote ex parte to the trial judge. (Doc. No. 9-1 at 56.) In the March 18, 1999, letter, TDOC advised the judge that the petitioner "must serve 100% of the sentence" for Count Nine (child rape) pursuant to Tennessee law, but TDOC was obligated to calculate the sentence at 30% release eligibility under the existing judgments. (*Id*.) TDOC therefore asked the trial court to execute an "amended or corrected order" reflecting that 30% release eligibility was "not the intent of the court." (*Id*.) On April 9, 1999, the judge prepared, signed and dated nine amended judgments that changed the petitioner's release eligibility from 30% to 100% ("1999 Judgments"). (*Id*. at 13-21.) The petitioner was not notified of the 1999 Judgments. (Doc. No. 9-2 at 4.)

In August 2003, still relying on the original 1994 Judgments, the petitioner filed an amended petition for post-conviction relief that raised claims concerning the performance of trial counsel. *Niceley II*, 2008 WL 544600, at *2. In May 2006, the post-conviction court held an evidentiary hearing and granted relief after concluding that the petitioner was prejudiced by the deficient performance of trial counsel. *Id*. at *2-5. On appeal, the TCCA reversed and ordered the petitioner returned to custody. *Id*. at *7-15. On November 24, 2008 – still unaware of the 1999 Judgments – the petitioner filed a federal petition for a writ of habeas corpus under 28 U.S.C. §

2

2254 that raised ineffective assistance of counsel claims. *Niceley v. Mills*, No. 3:08-cv-1126, 2011 WL 2197648, at *1 (M.D. Tenn. June 6, 2011). This court denied relief but granted a certificate of appealability. *Id*. at *8-9. The U.S. Court of Appeals for the Sixth Circuit affirmed. *Niceley v. Mills*, 521 F. App'x 398, 399 (6th Cir. 2013).

In 2015, a TDOC official supplied the petitioner with electronic reports that noted 30% release eligibility for some counts but 100% release eligibility for Count 9. (*See* Doc. No. 1 at 5-6.) The petitioner investigated by requesting certified copies of the judgments of record from the Robertson County court clerk's office. (*Id*.) On May 12, 2015, the clerk's office mailed the petitioner certified copies of the original 1994 Judgments for 30% release eligibility. (*Id*.) The petitioner then contacted TDOC, noted that he possessed the 1994 Judgments, and requested "a copy of the judgment that says Count 9 is a 100% sentence" to explain why "TDOC says that I was sentenced . . . at 100%." (Doc. No. 9-1 at 55.) On November 10, 2016, TDOC responded by producing copies of (a) TDOC's 1999 ex parte letter to the trial judge requesting amended judgments, and (b) the 1999 Judgments specifying 100% release eligibility. (*Id*. at 55-65.)

On September 5, 2017, the petitioner filed a motion to correct illegal sentence under Tennessee Rule of Criminal Procedure 36.1, arguing that the 1999 Judgments were illegal. (Doc. No. 9-1 at 24-37.) At the motion hearing, the state represented that counsel were working to resolve multiple problems with the 1999 Judgments by preparing and submitting "corrected judgments" for the court and the petitioner's consideration. (Doc. No. 9-2 at 4-5.) The record indicates that former judge Ben Strand was assisting the petitioner with this matter. (*Id*. at 4.) On November 15, 2017, Strand communicated in writing that the petitioner "reluctantly" consented to the entry of new judgments. (Doc. No. 9-1 at 69.) On November 22, 2017, the trial court entered a ten-paragraph order that made multiple changes to the 1999 Judgments ("2017 Judgment Order").

3

(Doc. No. 9-3 at 4; Doc. No. 9-1 at 67-68.) The petitioner timely appealed, arguing that the 100% sentence on Count 9 was illegal. (Doc. No. 9-1 at 71.) The TCCA concluded that the petitioner was serving "the correct sentence" under Tennessee law and affirmed without reaching any state or federal constitutional issues. *State v. Niceley*, No. M2017-02535-CCA-R3-CD, 2019 WL 413741, at *2 (Tenn. Crim. App. Feb. 1, 2019). The petitioner did not seek permission to appeal to the Tennessee Supreme Court. On January 27, 2020, the petitioner filed the instant Section 2254 petition.[1] (Doc. No. 1.)

## II.   Standard of Review

### A.   Habeas Relief

A federal habeas petition is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). *Cassano v. Shoop*, 1 F.4th 458, 465 (6th Cir. 2021) (citing *Woodford v. Garceau*, 538 U.S. 202, 210 (2003)). AEDPA was enacted "to reduce delays in the execution of state and federal criminal sentences . . . and to further the principles of comity, finality, and federalism." *Woodford*, 538 U.S. at 206 (internal citations and quotation marks omitted). It "reflects the view that habeas corpus is a 'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal." *Harrington v. Richter*, 562 U.S. 86, 102-03 (2011) (quoting *Jackson v. Virginia*, 443 U.S. 307, 332 n. 5 (1979) (Stevens, J., concurring)). Under AEDPA, "[a] federal court's collateral review of a state-court decision must be consistent with the respect due state courts in our federal system," *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003), and state courts are considered "adequate forums for the

---

[1] The court found that this petition was not second and successive because the "the existence of a new judgment permits a new application to attack the sentence, the conviction, or both." (Doc. No. 11 at 3 (quoting *King v. Morgan*, 807 F.3d 154, 158 (6th Cir. 2015)). The court also found that the petition was untimely and dismissed it. *Id*. However, the petitioner moved for relief under Federal Rule of Civil Procedure 60(b)(1). The court granted the Rule 60(b)(1) motion and reopened these proceedings as timely filed. (*See* Doc. No. 31.)

vindication of federal rights." *Burt v. Titlow*, 571 U.S. 12, 19 (2013); *see also Renico v. Lett*, 559 U.S. 766, 773 (2010) (explaining that AEDPA "demands that state-court decisions be given the benefit of the doubt") (quoting *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (per curiam)).

"In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Estelle v. McGuire*, 502 U.S. 62, 68 (1991) (citations omitted); 28 U.S.C. § 2254(a). AEDPA further restricts federal courts from providing relief on habeas claims that were previously "adjudicated on the merits" in the state courts unless the state-court adjudication (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. *Cassano*, 1 F.4th at 466 (quoting 28 U.S.C. § 2254(d)); *Harrington*, 562 U.S. at 100.

"Under the 'contrary to' clause, a federal habeas court may grant the writ 'if the state court applies a rule different from the governing law set forth in [the Supreme Court's] cases, or if it decides a case differently than [the Supreme Court has] done on a set of materially indistinguishable facts.'" *Lang v. Bobby*, 889 F.3d 803, 810 (6th Cir. 2018) (quoting *Bell v. Cone*, 535 U.S. 685, 694 (2002)). "Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from the Supreme Court's decisions but unreasonably applies the law or bases its decision on an unreasonable determination of the facts, in light of the record before the state court." *Id.* (citing *Harrington*, 562 U.S. at 100; *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000)). An incorrect or erroneous application of clearly established federal law is not the same as an unreasonable one; "relief is available under § 2254(d)(1)'s unreasonable-application clause if, and only if, it is so

obvious that a clearly established rule applies to a given set of facts that there could be no 'fairminded disagreement' on the question." *Carter v. Mitchell*, 829 F.3d 455, 468 (6th Cir. 2016) (quoting *White v. Woodall*, 572 U.S. 415, 427 (2014)); *Harrington*, 562 U.S. at 103. Likewise, a state court decision involves an unreasonable determination of the facts "only if it is shown that the state court's presumptively correct factual findings are rebutted by 'clear and convincing evidence' and do not have support in the record." *Matthews v. Ishee*, 486 F.3d 883, 889 (6th Cir. 2007) (quoting 28 U.S.C. § 2254(e)(1)); *Ayers v. Hudson*, 623 F.3d 301, 308 (6th Cir. 2010) (citing *Miller-El*, 537 U.S. at 340).

### B. Exhaustion and Procedural Default

Before a federal court may review the merits of a Section 2254 habeas claim, the petitioner must have "exhausted the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(1)(A); *Harrington*, 562 U.S. at 103. To be properly exhausted, each claim must be "fairly presented" through "one complete round of the State's established appellate review process." *O'Sullivan v. Boerckel*, 526 U.S. 838, 845, 848 (1999); *see also Anderson v. Harless*, 459 U.S. 4, 6 (1982) (quoting *Picard v. Connor*, 404 U.S. 270, 277 (1971)) (explaining that a habeas petitioner must provide the state courts with a "fair opportunity" to apply controlling legal principles to the facts bearing upon his constitutional claim). In Tennessee, a petitioner is "deemed to have exhausted all available state remedies for [a] claim" when it is presented to the TCCA. *Adams v. Holland*, 330 F.3d 398, 402 (6th Cir. 2003) (quoting Tenn. Sup. Ct. R. 39). A petitioner must then present to a federal court essentially the same facts and legal theories that were considered and rejected by the state courts. *Lorraine v. Coyle*, 291 F.3d 416, 425 (6th Cir. 2002) (citing *Wong v. Money*, 142 F.3d 313, 322 (6th Cir. 1998)). The burden is on a petitioner to demonstrate compliance with the

6

exhaustion requirement or that the available state procedure would be futile. *Rust v. Zent*, 17 F.3d 155, 160 (6th Cir. 1994).

The exhaustion requirement works together with the procedural-default doctrine, which generally bars federal habeas review of claims that were procedurally defaulted in the state courts. *Davila v. Davis*, 137 S. Ct. 2058, 2064 (2017); *O'Sullivan*, 526 U.S. at 848. A petitioner procedurally defaults a claim when he fails to properly exhaust available remedies and can no longer do so because state procedural rules have closed off any avenue for state court review on the merits. *Atkins v. Holloway*, 792 F.3d 654, 657 (6th Cir. 2015) (citing *Jones v. Bagley*, 696 F.3d 475, 483–84 (6th Cir. 2012)). Procedural default also occurs where the state court "actually . . . relied on [a state] procedural bar as an independent basis for its disposition of the case." *Caldwell v. Mississippi*, 472 U.S. 320, 327 (1985).

To overcome a procedural default, a petitioner may show "good cause for the default and actual prejudice from the claimed error." *Benton v. Brewer*, 942 F.3d 305, 307 (6th Cir. 2019) (citing *Sawyer v. Whitley*, 505 U.S. 333, 338-39 (1992)); *Sutton v. Carpenter*, 745 F.3d 787, 790 (6th Cir. 2014) (citing *Coleman*, 501 U.S. at 754). A petitioner may establish cause by "show[ing] that some objective factor external to the defense" – a factor that "cannot be fairly attributed to the petitioner – "impeded counsel's efforts to comply with the State's procedural rule." *Davila*, 137 S. Ct. at 2065 (citations omitted). Objective impediments include an unavailable claim or interference by officials that made compliance with the rule impracticable. *Id*. Attorney error does not constitute cause unless it is constitutionally ineffective assistance of counsel. *Edwards*, 529 U.S. at 451-52; *Benton*, 942 F.3d at 307-08. Generally, however, a claim of ineffective assistance

7

must be presented to the state courts as an independent claim before it may be used to establish cause for a procedural default.[2] *Murray*, 477 U.S. at 489.

Ineffective assistance of post-conviction counsel may establish cause under two circumstances. First, the complete abandonment (of the representation) by counsel during state post-conviction proceedings without notice to the petitioner may establish cause to excuse default. *Maples v. Thomas*, 565 U.S. 266, 288-89 (2012). Second, ineffective assistance of post-conviction counsel may establish the cause needed to excuse procedural default regarding substantial claims of ineffective assistance of trial counsel. *Martinez v. Ryan*, 566 U.S. 1, 17 (2012); *Trevino v. Thaler*, 569 U.S. 413, 429 (2013); *see also Sutton*, 745 F.3d at 792 (holding that *Martinez* and *Trevino* apply in Tennessee).

If cause is established, a petitioner must also demonstrate actual prejudice. To do so, a petitioner must demonstrate that the constitutional error "worked to his *actual* and substantial disadvantage." *Perkins v. LeCureux*, 58 F.3d 214, 219 (6th Cir. 1995) (emphasis in original) (quoting *United States v. Frady*, 456 U.S. 152, 170 (1982)). This means that "a petitioner must show not merely that the errors at his trial created a *possibility* of prejudice, but that they worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *Garcia-Dorantes v. Warren*, 801 F.3d 584, 598 (6th Cir. 2015) (emphasis in original); *Frady*, 465 U.S. at 170. In the alternative, a court may bypass these requirements if a petitioner presents an "extraordinary case" whereby a constitutional violation "probably resulted" in the conviction of someone who is "actually innocent" of the substantive offense. *Dretke v. Haley*, 541 U.S. 386, 392 (2004); *Benton*, 942 F.3d at 307.

---

[2] If the ineffective-assistance claim is not presented to the state courts in the manner that state law requires, that claim is itself procedurally defaulted and can only be used as cause for the underlying defaulted claim if the petitioner demonstrates cause and prejudice with respect to the ineffective assistance claim. *Edwards*, 529 U.S. at 452-53.

8

## III.    Analysis

With these principles in mind, the court turns to the claims raised by the petitioner. The petitioner first contends that the 1999 Judgments violate his constitutional rights. (*See* Doc. No. 1.) This is of no moment, however, because the court has clearly ruled that the agreed 2017 Judgment Order—to which the petitioner consented after a hearing—constituted "new sentence[s]" and, thus, a "new judgment" for habeas purposes. *See* Doc. No. 31 at 7-8 (explaining that "all parties understood that the 2017 Judgment Order was intended to substantively amend the 1999 Judgments"; the 2017 Judgment Order "modified each of the 1999 Judgments"; and the 2017 Judgment Order is "properly understood as a 'new judgment' for habeas purposes"); *see also In re Caldwell*, 917 F.3d 891, 894 (6th Cir. 2019) (reiterating the "straightforward" point that a modified sentence creates a "new judgment" for purposes of habeas challenges). Thus, the 1999 Judgments are no longer in force, and it the 2017 Judgment Order of which the petitioner must (but does not) complain.[3] The petitioner's claims concerning the 1999 Judgments will therefore be denied.

The petitioner also claims that the reading of the indictment to the jury at trial violated his Sixth and Fourteenth Amendment rights. More specifically, the petitioner asserts that the reading of the indictment rendered the evidence insufficient to sustain his convictions; violated his right to confront and cross-examine witnesses; deprived him of a fair trial; and deprived him of his right to a jury trial. The petitioner did not present any of these claims in state court. (*See* Doc. No. 45-2.) Because the petitioner may no longer raise these claims in state court, *see* Tenn. R. App. P. 4(a), the claims are technically exhausted but procedurally defaulted. *Atkins*, 792 F.3d at 657. The

---

[3] The court provided the petitioner with an opportunity to amend the petition after its Rule 60(b)(1) ruling that concluded the 2017 Judgment Order was the pending judgment for habeas purposes, but the petitioner declined. The petitioner's reply brief ignores the controlling nature of the 2017 Judgment Order and continues to argue the impropriety of the outdated 1999 Judgments. (*See* Doc. No. 50.)

9

petitioner does not address the cause or prejudice required to prevent operation of the general rule preventing federal habeas review of procedurally defaulted claims, and the court discerns none. *See Davila*, 582 U.S. at 527. In passing, however, the petitioner invokes "actual innocence." (Doc. No. 1 at 15.) This reference does not excuse the procedural default, however, because the petitioner does not meet the "extraordinarily high standard of review" associated with actual innocence claims. *Schlup v. Delo*, 513 U.S. 298, 315 (1995) (internal quotations omitted). An assertion of actual innocence may allow review of defaulted habeas claims in cases where cause for the default and resulting prejudice have not been shown, but the innocence claim must "implicat[e] a fundamental miscarriage of justice." *Id*. at 314-15 (citation omitted). "Without any *new* evidence of innocence, even the existence of a concededly meritorious constitutional violation is not in itself sufficient to establish a miscarriage of justice[.]" *Id*. at 316 (emphasis added). Here, the reading of the indictment was known to the petitioner and trial counsel during trial. In any event, the petitioner has made no showing that use of the indictment at trial would have impacted the petitioner's guilt or innocence. *See, e.g.*, *Davis v. State*, No. E2010-00022-CCA-R3PC, 2011 WL 319394, at *6 (Tenn. Crim. App. Jan. 27, 2011) ("Generally, the first thing to happen in a trial after the jury is sworn is that the indictment is read to the jury. . . . Our supreme court has stated that the reading of the indictment is an appropriate and proper procedure. . . . The indictment is not to be considered evidence of a defendant's guilt."). Because the petitioner has not shown cause or prejudice for the default, nor has he demonstrated that reading of the indictment was even erroneous, let alone that it amounts to new evidence of innocence undermining "confidence in the outcome of the trial," *Schlup*, 513 U.S. at 316, the court may not consider these defaulted claims.

**IV. Conclusion**

After careful analysis, Hugh A. Niceley is not entitled to relief under Section 2254 on any of his claims. Accordingly, the petition is **DENIED** and this action is **DISMISSED** with prejudice. The Court must issue or deny a certificate of appealability ("COA"), Habeas Rule 11(a), depending on whether a petitioner "has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). "[A] COA does not require a showing that the appeal will succeed," but courts should not issue a COA as a matter of course. *Id*. at 336. The Court concludes that Petitioner has not satisfied this standard and **DENIES** a COA. Petitioner may seek a COA directly from the U.S. Court of Appeals for the Sixth Circuit. Habeas Rule 11; Fed. R. App. P. 22(b)(1).

This is the final order denying all relief in this case. The Clerk **SHALL** enter judgment. Fed. R. Civ. P. 58(b).

It is so **ORDERED**.

 

_____
Aleta A. Trauger
United States District Judge

11